```
              IN THE UNITED STATES DISTRICT COURT FOR THE
                      EASTERN DISTRICT OF VIRGINIA

                           Alexandria Division
```

CLIFFORD FELDHEIM,            )
                              )
     Plaintiff,               )
                              )
          v.                  )   1:10cv726 (JCC)
                              )
LESHIRO J. TURNER, *et al.*,  )
                              )   *Formerly* Case No. CL-2009-14466
     Defendants.              )   In the Circuit Court of Fairfax County

## **M E M O R A N D U M   O P I N I O N**

In this case, the Court considers when a full-time telework federal employee's home-office constitutes a worksite for purposes of Virginia *respondeat superior* law. This matter is before the Court on Defendant Dennis A. Beauclair's Petition/Motion Pursuant to 28 U.S.C. § 2679(d)(3) for Certification of Scope of Employment. [Dkt. 4.] For the following reasons, the Court will deny Defendant's Motion.

### I.  Background

Before the court is a petition filed by Dennis A. Beauclair ("Defendant"), one of several defendants to this civil tort action filed by Plaintiff Clifford Feldheim ("Plaintiff"). (D. Brief[1] at 1.) Defendant seeks a judicial order under a

---

[1] Defendant's Memorandum in Support [Dkt. 5] will be referred to as "D. Brief." Plaintiff's Opposition [Dkt. 7] will be referred to as "P. Opp." The United States' Response [Dkt. 8] will be referred to as "U.S. Brief," and

1

provision of the Federal Tort Claims Act ("FTCA") authorizing this Court to "find and certify" that Defendant, a federal employee, "was acting within the scope of his employment" at the time of the automobile accident giving rise to this suit. 28 U.S.C. § 2679(d)(3); (D. Brief at 14.) This Court's granting of such certification would require the United States to substitute itself for Defendant in this suit and litigate the underlying personal injury action in federal court. *Id; see also* 28 U.S.C. § 1346(b)(1) (waiving sovereign immunity for torts committed by federal employees acting within the scope of their employment); *Osborn v. Haley*, 549 U.S. 225, 229-30 (2007) (explaining that when the Attorney General certifies that a federal employee was acting within the scope of his employment at the time of an alleged tort, "the employee is dismissed from the action, and the United States is substituted as defendant in place of the employee. The litigation is thereafter governed by the Federal Tort Claims Act . . . the case is to be removed [from state court] to a federal district court" to adjudicate future proceedings). Plaintiff and the United States request this Court deny Defendant's petition and remand the case to the Circuit Court of Fairfax County, pursuant to 28 U.S.C. § 2679(d)(3).

---

Defendant's Reply [Dkt. 9] will be referred to as "D. Reply." Defendant's Petition [Dkt. 4] will be referred to as "Pet."

A.  Factual Background

Defendant is a Lead IT Project Manager for the Federal Systems Integration and Management Center, part of the General Services Administration ("GSA"). (U.S. Exs. 2, 3.) Defendant trains government personnel in the technical evaluation of written proposals for government contracts. (Def. Dep. 9:10-18.) Relevant here, Defendant prepares documents for a technical evaluation team and briefs the team on how to conduct such evaluations. *Id.* at 8:8-18. Defendant, who had discretion in scheduling these briefings, scheduled a training evaluation session for 8:00 a.m. on October 11, 2007. *Id.* 10:4-22, 11:1-8.

i.  The Morning of October 11, 2007 and the Accident

The accident giving rise to this suit occurred somewhere between 5:00 and 5:30 a.m. on October 11, 2007, on Interstate 495 in Tyson's Corner in Fairfax County, Virginia. (Pet. at 1; U.S. Brief at 5.) On that morning, Defendant awoke around 4:00 a.m., got dressed, went to his basement home-office, gathered his papers, files, and laptop computer, put them in his briefcase, and got into to his car around 4:45 to 5:00 a.m. (Def. Dep. 13:1-22, 14:1-22.) Defendant then proceeded to travel directly from his home in on Londonderry Drive in Jefferson, Maryland, to the GSA offices in Alexandria, Virginia, aiming to arrive at the GSA offices around 6:00 a.m. (Def. Dep. 7:1-2, 15:6-10, 16:17-18.) From when Defendant woke up, 4:00

a.m., until he left his home, around 4:45 to 5:00 a.m., Defendant did not complete any work assignments at his home-office, nor was he required to do so. (Def. Dep. 13:12-13, 17:4-8, 18:1-9.) From the time Defendant left his home until the time he was scheduled to arrive at the GSA offices, he did not have any duty or task that he needed to complete, "[o]ther than just driving over to the [agency work] site." (Def. Dep. 19:12-22, 20:1.) Defendant had fully prepared on October 10 for the October 11 meeting, aside from making some copies of documents, which he intended to do at the GSA offices once he arrived. (*Id.* 11:17-22, 12:1-21.)

On his way to work on October 11, 2007, at approximately 5:00 a.m.,[2] defendant was involved in a car accident on I-495. Defendant's car struck a vehicle driven by a Mr. Tellez that in turn struck Plaintiff. (P. Opp. 2.) At the time of the accident, Defendant was driving his personal vehicle, for which he personally paid all the property taxes and insurance. (Def. Dep. 34:17-37:12.) Defendant was not reimbursed or compensated by GSA for any of the travel costs associated with his October 11 drive, and though he claims he could have done so, he never sought reimbursement for travel from his home to the GSA offices. (*Id.* 56:7-57:7.) Defendant did not file a workers' compensation claim related to the

---
[2] The Virginia State Police Report (Plaintiff's Ex. A) states the time was 5:00 a.m. In his deposition, Defendant said "around 5:30" a.m. (Def. Dep. 20:4-5.)

injuries he sustained in the accident and did not and was not required to file any accident report with the GSA.  (*Id*. 25:3-5, 100:10-101:1.)  All costs and damages to Defendant stemming from the accident were paid not by GSA but by his own personal automobile and health insurance.  (*Id*. 24:18-25:10, 38:5-8.)

        ii.      <u>Defendant's Telework Arrangement with the GSA</u>

In September 2004, Defendant entered into an agreement with the GSA entitled "Modified Work Agreement Flexible Workplace Program" (the "Telework Agreement").  (Def. Ex. 4; U.S. Ex. 1.)  Thereafter, Defendant began to work as a full-time teleworker, working five days per week from his home-office, which was fully equipped by the GSA with the necessary supplies and electronics.  (D. Brief at 4.)  The Telework Agreement was renewed annually and was in effect on October 11, 2007.  (U.S. Ex. 1.)  The sole change made to the Telework Agreement is in the October 2, 2007, "Flexiplace Renewal Agreement," where the "comments" section states that Defendant is a "full-time teleworker."  (U.S Ex. 1.)  The prior two renewal agreements did not have this notation.  *Id*.  Relevant here, the Telework Agreement states that Defendant's "official duty station is [the GSA offices at] 6354 Walker Lane, Alex[andria], Va., 22310."  (U.S. Ex. 1.)  The agreement establishes Defendant's home address as his "alternate duty station," where he was designated to work while not at the official duty station in Alexandria.

5

*Id*. Defendant's "official tour of duty" was from 6:30 a.m. to 4:00 p.m. *Id*. Defendant's "Standard Form 50" ("SF 50"), the government's official record for personnel matters, in effect at the time of the alleged tort states that Defendant's "duty station" is Alexandria, Virginia. (U.S. Ex. 2.)

    B.    Procedural Background

Plaintiff brought this civil tort action in the Circuit Court of Fairfax County on October 6, 2009, naming Mr. Beauclair as one of multiple defendants. [Dkt. 1, Ex. A.] Defendant delivered a copy of the complaint to the appropriate GSA manager, requesting scope certification. (D. Brief at 2.) In January 2010, Defendant requested that the United States Attorney certify that at the time of the accident giving rise to the suit, Defendant was acting with the scope of employment. (U.S. Brief at 2-3.) On March 4, 2010, the United States Attorney denied Defendant's request for scope certification. (U.S. Brief at 3; D. Brief at 2.) On May 28, 2010, Defendant filed a petition in the Circuit Court of Fairfax County seeking scope certification. (U.S. Brief at 3.) On June 29, 2010, pursuant to 28 U.S.C. § 2679(d)(3), the United States removed the Fairfax County proceedings to this Court for the sole purpose of litigating Defendant's scope petition. *Id*.

On August 23, 2010, Defendant filed with this Court his Petition/Motion Pursuant to 28 U.S.C. § 2679(d)(3) for

Certification of Scope of Employment (the "Petition") and corresponding Memorandum in Support. [Dkts. 4, 5.] Plaintiff filed his Opposition on September 9, 2010, and the United States filed its Response on September 10, 2010. [Dkts. 7, 8.] Defendant filed his Reply on September 16, 2010. [Dkt. 9.] Defendant's Petition/Motion is now before the Court.

## II.  Standard of Review

The Fourth Circuit, in *Gutierrez de Martinez v. DEA*, 111 F.3d 1148 (4th Cir. 1997), found that "Courts that have considered the issue [of] review of scope-of-employment certifications [], have fashioned a fairly uniform body of law governing review [of scope certifications] at the district court level." *Id*. at 1153.  The United States Attorney's certification on behalf of the Attorney General "is conclusive unless challenged," and "[w]hen the certification is challenged, it serves as prima facie evidence and shifts the burden to the plaintiff to prove, by a preponderance of the evidence, that the defendant federal employee was acting outside the scope of his employment." *Id*.  If the challenger comes forward with "specific evidence" and "not mere conclusory allegations and speculation" that "contradicts the [the United States Attorney's] certification decision," then the Government may submit evidence in support of the scope decision, whereupon the district court reviews the evidence under a *de novo* legal

7

standard. *Id*. at 1154-55. In reviewing the scope certification *de novo*, this Court may consider "the pleadings, the affidavits, and any supporting documentary evidence" to determine whether there is "an issue of material fact." *Id*. at 1155. It is for the district court to assess the sufficiency of the evidence produced by the plaintiffs. "Only if the district court concludes that there is a genuine question of fact material to the scope-of-employment issue should the federal employee be burdened with discovery and an evidentiary hearing." *Id.*

*Gutierrez* dealt with a challenge to a decision to *grant* scope certification, and the instant case addresses a decision to *deny* scope certification. Though a number of cases in this Circuit have addressed the burden issue with respect to challenges to a *grant* of scope certification, see *Id*. at 1153, *Maron v. United States*, 126 F.3d 317, 323 (4th Cir. 1997), *Borneman v. United States*, 213 F.3d 819, 827 (4th Cir. 2000), the burden of persuasion in petitions challenging *denials* of scope certification appears to be one of first impression in this Circuit.

This Court sees no reason for the legal standard and burden of persuasion with respect to petitions challenging *denials* of scope certification to be any different from that outlined in *Gutierrez* for challenges to *grants* of scope certification. Other courts examining the issue have found that

8

the petitioner seeking review bears the burden of presenting evidence and must carry his burden by a preponderance. *See, e.g.*, *Kashin v. Kent*, 457 F.3d 1033, 1036 (9th Cir. 2006) ("[T]he party seeking review bears the burden of presenting evidence and disproving the Attorney General's decision to grant or deny scope of employment certification by a preponderance of the evidence."; *Lyons v. Brown*, 158 F.3d 605, 610 (1st Cir. 1998) (movant for certification under § 2679(d)(3) bears the burden of proof); *Vallier v. Jet Propulsion Laboratory*, 120 F. Supp. 2d 887, 893 (C.D. Cal. 2000) (same); *Allender v. Scott*, 379 F. Supp. 2d 1206, 1211 (D.N.M. 2005) ("A party seeking review of the Attorney General's denial of certification bears the burden of presenting evidence and disproving the Attorney General's decision by a preponderance of the evidence."); *Lacey v. Murphy*, No. 02-2281, 2003 WL 23571269 at *6 (D.N.J. Dec. 17, 2003) ("The party seeking review [of the Attorney General's denial of scope certification] bears the burden of rebutting or disproving, by a preponderance of the evidence, the Attorney General's decision to grant or deny the scope of employment certification."). Defendant cites no cases to the contrary.[3] Accordingly, Defendant bears the burden of establishing by a preponderance of the evidence that he was acting within the

---

[3] In his Reply, Defendant concedes that he bears the burden on the issue. (D. Reply p. 1.)

scope of his employment at the time of the accident on October 11, 2007.

### III. Analysis

Federal law provides a federal employee "acting within the scope of his office or employment" broad immunity from personal liability in suits arising under state law. *See generally* 28 U.S.C. § 1679. The overarching issue in this case, then, is whether Defendant was acting within the scope of his employment at the time of the October 2007 accident.

In determining whether a federal employee was acting within the scope of employment for purposes of 28 U.S.C § 2679 scope certification, courts in this Circuit must apply "the law of the state where the conduct occurred." *Gutierrez*, 111 F.3d at 1156; *Ross v. Bryan*, 309 F.3d 830, 834 (4th Cir. 2002) ("To determine whether [alleged tortfeasor's] acts were within the scope of his employment, we must apply Virginia *respondeat superior* law."). Here, the applicable law is that of the Commonwealth of Virginia. This Court's inquiry, then, is whether under Virginia law Defendant was acting within the scope of his employment at the time of the accident.

A. <u>*Respondeat Superior* Law of Virginia</u>

Under Virginia law, an act is within the scope of employment if it was "'fairly and naturally incident to the business' and if it was done 'while the servant was engaged upon the master's business and be done, although mistakenly or ill-

10

advisably, . . . to further the master's interests' and did not arise 'wholly from some external, independent, and personal motive on the part of the servant.'"  *Ross*, 309 F.3d at 834 (quoting *Sayles v. Piccadilly Cafeterias, Inc.*, 242 Va. 328, 410 (1991) (citations omitted)).

"In Virginia, commuting or the 'mere act of traveling to work [is] not a natural incident' of an employer's business." *Id.* (citing *Smith v. Landmark Commc'ns, Inc.*, 246 Va. 149, 152 (1993)).  There are certain exceptions to this general rule, however: (1) when the employee was reimbursed or otherwise compensated for travel time, mileage, lodging, and/or other travel-related expenses; (2) when the means of transportation is provided by the employer or the time consumed is paid for or included in the wages; (3) when the way of ingress or egress used is constructed by the employer or is the sole and exclusive way of ingress and egress; and (4) when the employee on his way to or from work is still charged with some duty or task in connection with his employment.  *See Ross*, 309 F.3d at 834); *Wells v. United States*, No. 2:06-cv-177, 2006 WL 2987948, *3 (E.D. Va. Oct. 17, 2006); *GATX Tank Erection Co. v. Gnewuch*, 221 Va. 600, 603-04 (1980); *Taylor v. Robertson Chevrolet Co.*, 177 Va. 289, 297 (1941).

None of these exceptions are applicable in this case.  Defendant was not reimbursed or otherwise compensated for the

11

travel during which the accident occurred.[4]  Defendant was not
provided a rental vehicle nor was reimbursed for his use of his
personal car.  Defendant's means of ingress to the GSA offices
was not the exclusive means, nor was it constructed by his
employer.  Defendant had no duty or task to complete that
morning other than driving to the GSA offices.  Moreover, other
factors support Plaintiff's and the United States' argument that
Defendant was acting outside of the scope of employment:
Defendant was not traveling under any supervisor's instructions,
the accident occurred before the official start of Defendant's
work day, and the accident occurred well before the 8:00 a.m.
start time of the meeting that Defendant himself scheduled.
Based on these factors, Defendant was not within the scope of
his employment at the time of the accident.

        B.    <u>Traveling From One Worksite to Another</u>

        The crux of Defendant's argument for scope
certification, however, is not quite as easily dismissed.  This
Court in *Wells* stated that "[t]he general 'commuter rule' does
not apply to traveling from one work assignment to another."
*Wells*, 2007 WL 2987948, at *3.  Defendant argues that he was not
commuting to work at all, but rather traveling from one worksite

---

[4] Defendant suggested in his deposition that he could have claimed reimbursement for his travel to the GSA offices on October 11, 2007.  41 C.F.R. § 301-11.1, however, outlining general rules for eligibility for per diem expenses, states that a federal employee is eligible for expense allowances on "official travel" and when he or she is "in travel status for 12 hours or more."  41 C.F.R. § 301-10.300, outlining when an employee may use a privately owned vehicle for official travel, states that an employee may do so only when authorized by the agency for which he or she works.

to another, namely from his telework home-office to the GSA offices.

As an initial matter, the United States argues that Defendant's position lacks merit, because his home-office was not Defendant's official duty station ("ODS"). To support this position, the United States points to the Telework Agreement and the SF 50 in place at the time of the accident. The Telework Agreement indeed provides that Defendant's ODS is the GSA offices in Alexandria. (U.S. Ex. 1.) That agreement also provides, however, that Defendant's "alternate duty station" is his home-office in Jefferson, Maryland. *Id*. That Defendant's home-office was not his official duty station is not dispositive;[5] the Telework Agreement expressly permitted him to work from home, and the October 2, 2007, Flexiplace Renewal Agreement stated that Defendant was a "full-time teleworker." *Id*. Defendant's home surely constituted a worksite in at least certain instances.

The United States is correct insofar as Defendant's telework from home does not, in itself, extend the scope of his employment to encompass all incidents that occur when he leaves his home for work-related purposes. Put simply, sometimes Defendant's home was his home, and sometimes his home was his

---

[5] Similarly, 5 C.F.R. § 531.605(d)(2), determining an employee's "official work site" for locality-based comparability payments, is not dispositive. That Defendant's home-office was used to determine his locality-based pay does not in itself make his home a work site at all times for purposes of Virginia *respondeat superior* law.

13

home-office; the question is *when* Defendant's home becomes his home-office for purposes of Virginia *respondeat superior* law. Applying Virginia's *respondeat superior* rule, Defendant's home becomes a worksite when he has engaged in the GSA's business, *i.e.*, when he has reported to work. *Ross*, 309 F.3d at 834. The Court does not and need not address this question as a general matter. For present purposes, the Court will examine whether Defendant's home became a worksite on the morning of October 11, 2007. It is worth recalling here that Defendant bears the burden of proving that he was acting within the scope of employment.

Defendant argues that "it would be incorrect to state that [his] work activities had not yet begun," because he "made [] his normal commute down the stairs to his basement office that morning." (D. Reply p. 5.) Defendant goes on to state that "[t]he trip was not for personal reasons. . . . The purpose of his trip, short and sweet as it may have been, was directly in connection with the work to be done later in the day at a different office location." *Id*. Defendant argues that "[he] was in fact already at his duty station, his telework site, the morning of October 11, 2007, on the business and for the benefit of his employer." (D. Brief p. 12.) Defendant cites a number of cases in support of his proposition.

14

As to the facts and the law, however, this Court finds Defendant's argument unavailing. With respect to the facts, Defendant acknowledged in his deposition that on that morning, Defendant awoke around 4:00 a.m., got dressed, went to his basement home-office, gathered his papers, files, and laptop computer, put them in his briefcase and got into to his car. (Def. Dep. 13:1-22, 14:1-22.) Defendant then proceeded to travel directly from his home to the GSA offices, aiming to arrive at the GSA offices around 6:00 a.m., two hours in advance of his scheduled meeting and one half-hour ahead of his tour of duty start-time. (Def. Dep. 7:1-2, 15: 6-10, 16:17-18; U.S. Ex. 2, 3.) From when Defendant woke up until he left his home around 45 minutes to one hour later, he did not complete any work assignments at his home-office, nor was he required to do so. (Def. Dep. 18:1-9.) Defendant had no duty or task to complete, "[o]ther than just driving to the [agency work] site," *i.e.*, other than commuting to the worksite. (Def. Dep. 19:12-22, 20:1.) Defendant had fully prepared on October 10 for the October 11 meeting, aside from making some copies of documents, which he intended to do at the GSA offices once he arrived. (*Id*. pp. 11:17-22, 12:1-21.)

The Court finds that Defendant has not made a showing by a preponderance of the evidence that his actions on the morning of October 11, 2007, were "done 'while the servant was

15

engaged upon the master's business and . . . to further the master's interests' [rather than arising] 'wholly from some external, independent, and personal motive on the part of the servant.'" *Ross*, 309 F.3d at 834. These facts establish that Defendant's actions were merely in preparation for a commute from his home to the GSA offices, and that "[d]espite the government's ultimate benefit [], [Defendant] was simply traveling to work." *Id*. He was not engaged in any GSA business in the early morning of October 11, 2007, and was neither planning to nor required to do so until he arrived at the GSA offices in Alexandria.

With respect to the cases Defendant cites for support are easily distinguished from the instant case. As to the *Wells* case, the naval officer commuted from a private residence to "muster" at the U.S.S. Stout. *See Wells*, 2006 WL 2987948, at *1 (muster, required reporting to the ship, "includes roll call, the daily and weekly plans for the ship, and the assignment of each individual's daily work through a work center supervisor"). After the officer reported for muster and received his daily assignment, he drove to another site to work on the U.S.S. Stout's weapon systems. *Id*. While on this drive, he got into a car accident, and this Court held that the officer was acting within the scope of his employment at the time of the accident. *Id*. at *5-6. Significantly, the Court expressly held that

reporting for muster established the master-servant relationship, because it is where service members lose their liberty and receive orders.  *Id*.  These factors, as discussed above, are not present here.  Defendant was neither required to report to work at any time on October 11, 2007, before he would have arrived at the GSA, nor did his gathering papers and retrieving his laptop result in his losing his liberty or receiving orders.  In brief, Defendant had not yet started working that day.

     The Virginia Supreme Court in *Taylor* found the employee within scope of his employment when, while on duty, he was traveling from one worksite to another, with a brief detour at home to eat dinner.  The Virginia Supreme Court held that this was "a simple case in which he was required by the defendant to go from one assignment to another.  He had to eat somewhere, and his rights are not affected by the fact that he ate at home instead of in a restaurant.  The detour to his home was too slight to be of moment."  *Taylor*, 177 Va. at 297-98.  Again, as discussed above, Defendant's circumstances are distinguishable.  The employee in *Taylor* had indisputably reported to work, made a detour in going home to eat, and was indisputably returning to work thereafter.  Here, Defendant never reported to work in the first instance.

17

Another case cited by Defendant is this Court's *Wilkinson* case. That case is also distinguishable. The facts in *Wilkinson* provided exceptions from the commuter rule not present here. For example, the employee in that case had direct, specific orders from the government concerning the travel, a per diem allowance for mileage and expenses, and a government-supplied rental vehicle. *Wilkinson v. Gray*, 523 F. Supp. 372, 374 (E.D. Va. 1981), *aff'd*, 677 F.2d 998 (4th Cir. 1982); *see also Ross*, 309 F.3d at 834 (distinguishing Wilkinson on these grounds). As to *Ross*, the Fourth Circuit rejected the contention that a serviceman's dwelling on a military base meant that travel from his dwelling to his duty station constituted intra-worksite travel. Such a "contention would seemingly extend the course of employment, at least in matters involving military bases, to all incidents which happened on the base where a service person was on the way to his or her duty station." *Id*. That reasoning can be equally applied in the instant case. As discussed above, that Defendant performs some of his work at his telework home-office does not, in itself, extend the scope of his employment to all incidents that occur when he leaves his that location for work-related purposes.

    iii.    <u>The Implications of Defendant's Position</u>

Both Plaintiff and the United States discuss the implications of Defendant's argument. Plaintiff argues that as

18

a matter of both statutory construction and policy, this Court should reject Defendant's suggested motion for certification that would have the effect of expanding FTCA liability to cover any activity that in any way does, or somehow could, relate to a teleworker's home-office. In Plaintiff's view, *Ross* makes clear that Congress never could have envisioned such potential liability, and the applicable statutory provisions reject such an expansive interpretation.[6] The United States argues that under Defendant's position, any time he or any other federal telework employee leaves his home for work-related purposes, he would be entitled to scope immunity under the FTCA. This would mean, according to the United States, that if any federal teleworker "were to leave his home to buy some stationary supplies at the local office-supply store at 9:00 P.M. on a Saturday evening, he would be entitled to FTCA immunity for any accident that occurred on his way to or from the store." (U.S. Brief at 19.)

The Court does not and need not address those contentions here, however, because even assuming Defendant's home-office *could* constitute a worksite for *respondeat superior* purposes, it did not on the morning of October 11, 2007.

---

[6] Plaintiff cites the following in support of this proposition: "The FTCA, as a waiver of sovereign immunity, is strictly construed, and all ambiguities are resolved in favor of the sovereign." *See Robb v. United States*, 80 F.3d 884, 887 (4th Cir. 1996).

## IV. Conclusion

For these reasons, the Court will deny Defendant Dennis A. Beauclair's Petition/Motion Pursuant to 28 U.S.C. § 2679(d)(3) for Certification of Scope of Employment.

An appropriate order will issue.

|  | /s/ |
|---|---|
| September 29, 2010 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |